## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**STATON TECHIYA, LLC,**

      **Plaintiff,**

v.

**HARMAN INTERNATIONAL INDUSTRIES, INC. AND HARMAN-KARDON, INC.,**

      **Defendants.**

**Court No. 1:23-cv-00802-JCG**

## OPINION AND ORDER

This matter involves patent infringement claims filed by Staton Techiya, LLC ("Plaintiff" or "Techiya") against Harman International Industries, Inc. and Harman-Kardon, Inc. (collectively, "Defendants" or "Harman"), alleging infringement of nine patents involving ear-worn technology.  For the reasons discussed below, the Court denies in part and grants in part Harman's motion to dismiss the claims.

### I.    Background

Techiya is the exclusive owner by assignment of U.S. Patents Nos. 8,081,780 ("the '780 Patent"), 8,805,692 ("the '692 Patent"), 8,150,044 ("the '044 Patent"), 11,489,966 ("the '966 Patent"), 11,659,315 ("the '315 Patent"), 11,683,643 ("the '643 Patent"), 11,665,493 ("the '493 Patent"), 11,610,587 ("the

'587 Patent"), and 11,521,632 ("the '632 Patent") (collectively, "Asserted

Patents"), and holds all rights, title, and interest in them.  Compl. ¶¶ 7–15, 48, 62,

76, 90, 104, 118, 132, 146, 160 (D.I. 1).

The '780 Patent is titled "Method and Device for Acoustic Management

Control of Multiple Microphones," and was issued by the U.S. Patent and

Trademark Office ("USPTO") on December 20, 2011.  Id. at Ex. A ("'780

Patent").  The '692 Patent is titled "Personal Audio Assistant Device and Method,"

and was issued by the USPTO on August 12, 2014.  Id. at Ex. B ("'692 Patent").

The '044 Patent is titled "Method and Device Configured for Sound Signature

Detection," and was issued by the USPTO on April 3, 2012.  Id. at Ex. C ("'044

Patent").  The '966 Patent is titled "Method and Apparatus for In-Ear Canal Sound

Suppression," and was issued by the USPTO on November 1, 2022.  Id. at Ex. D

("'966 Patent").  The '315 Patent is titled "Methods and Mechanisms for

Inflation," and was issued by the USPTO on May 23, 2023.  Id. at Ex. E ("'315

Patent").  The '643 Patent is titled "Method and Device for In Ear Canal Echo

Suppression," and was issued by the USPTO on June 20, 2023.  Id. at Ex. F ("'643

Patent").  The '493 Patent is titled "Acoustic Sealing Analysis System," and was

issued by the USPTO on May 30, 2023.  Id. at Ex. G ("'493 Patent").  The '587

Patent is titled "Personalized Sound Management and Method," and was issued by

the USPTO on March 21, 2023.  Id. at Ex. H ("'587 Patent").  The '632 Patent is

titled "Personal Audio Assistant Device and Method," and was issued by the USPTO on December 6, 2022. Id. at Ex. I ("'632 Patent").

Techiya owns patents in the field of ear-worn technology. Id. ¶ 25. The field of ear-worn technology encompasses sound processing for personal assistance technologies or hearing aids; intelligent systems packaging, including microelectronics and micro-mechanical systems that enable comfort, fit, and performance; and data processing, including artificial intelligence and big data processing. Id. ¶ 24. Techiya's patented technologies include level-dependent ambient awareness, user-controlled passthrough, dosimetry, personal voice activation in high-ambient-noise conditions, and acoustic event detection. Id. ¶ 26.

No later than September 14, 2018, Techiya and Harman met to discuss Techiya's patented technology, as well as Techiya's ongoing research and development efforts, and executed a mutual non-disclosure agreement, which was made to protect disclosure of information even to parent entities of Harman. Id. ¶¶ 29–30. Techiya initially met with Harman's Chief Audio Fellow, Dr. Sean Olive. Id. ¶ 29.

Beginning in October 2018, Techiya sent studies, marketing materials, and prototypes to Harman, with some of the information directly related to the Asserted Patents, such as the "talk-to-hear" technology and ambient awareness technology, embodied in at least the '780 Patent, '632 Patent, '692 Patent, '966 Patent, '315

Patent, and '643 Patent. Id. ¶ 31. After Harman reviewed the information,

Harman's Senior Principal Engineer of Acoustics, Todd Welti, conducted various

tests on the prototypes. Id. ¶ 32. Harman subsequently requested additional

information and Techiya provided additional prototypes and shared proprietary

whitepapers. Id.

In early 2019, Techiya met with other Harman representatives, presented

additional demonstrations of the prototypes, and showed a promotional video that

advertised its patented ear-worn technologies and their benefits to consumers. Id.

¶ 33. Techiya sent the promotional video to Harman. Id.

In February 2019, Techiya sent Harman an "Opportunity Overview" slide

deck in a follow-up message to a meeting. Id. ¶ 34. The deck contained an

enumeration of several different advantages offered by Techiya's ear-worn

technology and a description of patents relevant to some of the related fields. Id.

Several of the Asserted Patents were identified in the deck. Id.

In March 2019, Techiya met with Harman's Chief Financial Officer

("CFO") Evelyn Heinbach, who asked questions about Techiya's intellectual

property and whether Techiya could provide demonstrations and technical

background on its patented technology. Id. ¶ 35.

On May 15, 2019, Techiya presented to Harman a comprehensive valuation

model of Techiya's intellectual property arranged in a spreadsheet, which

contained hundreds of patents and patent applications categorized by feature and technology. Id. ¶ 36. This spreadsheet contained references to the '780 and '692 Patents. Id.

No earlier than March of 2020, Harman released the AKG N400NC TWS Headphones ("AKG Accused Product"). Id. ¶ 37. No earlier than April of 2020, Harman released the Harman Kardon FLY TWS (the "Harman Kardon Accused Product"). Id.

On May 4, 2020, Harman's CFO Evelyn Heinbach confirmed that "Samsung has done a detailed review of [Techiya's] patent portfolio." Id. ¶ 38. She informed Techiya on May 23, 2020 that Harman would not be "looking to pursue further steps at this point." Id. ¶ 39.

No earlier than March of 2021, Harman released the other Accused Products, which include the JBL Live 300TWS, Tour Pro+ TWS, Tour Pro 2, Tune Buds, Live Free 2 TWS, Live Pro+ TWS, and Quantum TWS Air Headphones ("JBL Accused Products"). Id. ¶¶ 20, 40.

On July 25, 2023, Techiya filed its Complaint, alleging that Harman directly, indirectly, and willfully infringed the Asserted Patents with the AKG Accused Product, the Harman Kardon Accused Product, and JBL Accused Products (collectively, the "Accused Products"). Id. ¶ 20. Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief. See id. ¶ 174.

On November 29, 2023, Harman moved to partially dismiss the Complaint. Defs.' Part. Mot. Dismiss ("Defs.' Mot.") (D.I. 15); Defs.' Opening Br. Supp. Part. Mot. Dismiss Failure State Claim ("Defs.' Moving Br.") (D.I. 16); see also Decl. Brian Lebow Supp. Harman's Part. Mot. Dismiss Failure State Claim (D.I. 17); Ex. 1 ("Notice of Allowance for '493 Patent") (D.I. 17-1); Ex. 2 ("Response to Office Action for '643 Patent") (D.I. 17-2).  Techiya opposed the motion, and Harman filed its reply brief.  Pl.'s Resp. Br. Opp'n Defs.' Mot. Dismiss Failure State Claim ("Pl.'s Opp'n Br.") (D.I. 29); Defs.' Reply Supp. Mot. Dismiss Failure State Claim ("Defs.' Reply Br.") (D.I. 34).

The Court held oral argument on April 10, 2024.  Oral Arg. (Apr. 10, 2024). The Parties also filed supplemental authority with the Court.  See Pl.'s April 23 First Letter Suppl. Authority (D.I. 39); Pl.'s April 23 Second Letter Suppl. Authority (D.I. 40); Defs.' May 3 Letter Suppl. Authority (D.I. 41).

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Id.</u>  Plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully."  <u>Id.</u>  In considering a motion to dismiss, the Court

must assume the factual allegations contained in the complaint to be true and draw

all reasonable inferences in favor of the non-moving party.  <u>Twombly</u>, 550 U.S.

555–56.  However, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice" to state a claim.  <u>Iqbal</u>,

556 U.S. at 679.

In patent infringement cases, allegations of infringement are governed by the

<u>Iqbal</u>/<u>Twombly</u> pleading standard.  <u>Golden v. Apple Inc.</u>, 819 F. App'x 930, 930–

31 (Fed. Cir. 2020).  There must be some factual allegations that, when taken as

true, articulate why it is plausible that the accused product infringes the patent

claim.  <u>Bot M8 LLC v. Sony Corp.</u> ("<u>Bot M8</u>"), 4 F.4th 1342, 1353 (Fed. Cir.

2021).

### III.    Discussion

Harman moves to dismiss partially Counts I, II, III, IV, and IX as to the

induced and willful infringement claims.  Defs.' Moving Br. at 1–2.  Harman

moves to dismiss Counts V, VI, VII, and VIII for all claims.  Id.  Harman argues

that: (1) the claims for direct infringement should be dismissed for Counts V, VI,

VII, and VIII; and (2) the claims for induced and willful infringement should be

dismissed for all counts.  See id. at 1–2, 4–5.  Harman refers to the '966, '632,

'587, '315, '493, and '643 Patents as the "Post-2020 Patents" and the '044, '692,

and '780 Patents as the "Pre-2020 Patents" for purposes of dismissing the induced

and willful infringement claims.  Id. at 4–5. The "Pre-2020 Patents" involve

Techiya's patents that were issued before May 4, 2020, and the "Post-2020

Patents" involve Techiya's patents that were issued on or after November 1, 2022,

with applications published on or after July 16, 2020.  Defs.' Moving Br. at 4–5;

Compl. ¶¶ 7–15.

### A.     Infringement of the '780 Patent (Count I)

Count I alleges that Harman directly, indirectly, and willfully infringed, and

continues to infringe, at least claim 1 of the '780 Patent with the JBL Accused

Products.  Compl. ¶¶ 49, 55.  Harman moves to dismiss Count I only as to the

induced and willful infringement claims.  Defs.' Mot. at 1.

### 1.    Induced Infringement

Techiya filed both pre-suit and post-suit[1] induced infringement claims for

the '780 Patent, alleging that Harman had notice of its infringement "since receiving

the aforementioned slide deck from [Techiya] in February of 2019" or, in the

alternative, "at least since the date of the filing of the complaint in this action," and

indirectly infringed and continues to indirectly infringe by actively inducing

infringement of the '780 Patent by others, such as users of the JBL Accused

Products within this district.  Compl. ¶¶ 51, 55.

A plaintiff can prevail on claims of induced infringement only if it first

establishes direct infringement.  See Limelight Networks, Inc. v. Akamai Techs.,

Inc., 572 U.S. 915, 921 (2014) ("[I]nducement liability may arise if, but only if,

there is direct infringement.").  Harman does not argue in this Rule 12(b)(6)

motion that Techiya failed to state a direct infringement claim for which relief can

be granted for the '780 Patent, so for the purposes of this motion, the Court

presumes that Techiya plausibly pled direct infringement of the '780 Patent.

To plead induced infringement under 35 U.S.C. § 271(b), a complaint must

plead facts plausibly showing that the accused infringer specifically intended

---

[1]  The Court uses "post-suit" and "post-filing" conduct interchangeably, referring
to conduct occurring after the date on which the patentee filed the relevant claim of
induced or willful infringement.

another party to infringe the patent and knew that the other party's acts constituted infringement. <u>Lifetime Indus., Inc. v. Trim-Lok, Inc.</u>, 869 F.3d 1372, 1379 (Fed. Cir. 2017); <u>see also</u> 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").  This requires a plaintiff to allege facts supporting a reasonable inference that the defendant had knowledge of the patent-in-suit. <u>Global-Tech Appliances, Inc. v. SEB S.A.</u>, 563 U.S. 754, 764–66 (2011); <u>see also</u> <u>bioMérieux, S.A. v. Hologic, Inc.</u>, No. 18-cv-00021-LPS, 2018 WL 4603267, at *5 (D. Del. Sept. 25, 2018).  "[U]nlike direct infringement, the patentee must show that the accused inducer acted affirmatively to encourage infringement with the knowledge that the induced acts constitute patent infringement." <u>Microsoft Corp. v. DataTern, Inc.</u>, 755 F.3d 899, 904 (Fed. Cir. 2014) (citing <u>Global-Tech</u>, 563 U.S. at 764–66).  Without knowledge of infringement, there is not enough to establish liability for induced infringement. <u>See</u> <u>Global-Tech</u>, 563 U.S. at 765–66.  If actual knowledge is not adequately pled, a patentee can establish knowledge of patent infringement by showing that the defendant was willfully blind—<i>i.e.</i>, by showing that the defendant (1) subjectively believed that there was a high probability that the induced acts constituted infringement and (2) took deliberate actions to avoid learning of that fact. <u>Id.</u>

Specific intent is a distinct element from the knowing inducement of infringing acts.  "A party asserting a claim of induced infringement must plead

facts plausibly demonstrating that there has been direct infringement, and that 'the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" Tonal Sys., Inc. v. ICON Health & Fitness, Inc., No. 20-cv-01197-LPS, 2021 WL 1785072, at *3 (quoting Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

### a.    Pre-Suit Claim

The '780 Patent was issued before May 4, 2020 and is referred to as one of the "Pre-2020 Patents."  The Complaint alleges that Harman reviewed Techiya's patent portfolio and prototypes and had several discussions regarding Techiya's intellectual property and prototypes beginning no later than September 14, 2018; Techiya sent Harman an "Opportunity Overview" slide deck in February 2019, which listed several of the Asserted Patents, such as the '780 Patent, '692 Patent, and '044 Patent; and Techiya presented to Harman on May 15, 2019 a comprehensive valuation model of Techiya's intellectual property arranged in a spreadsheet, which contained hundreds of patents and patent applications, categorized by feature and technology, with references to the '780 and '692 Patents.  Compl. ¶¶ 29–36.  Based on these allegations, the Complaint plausibly pleads that Harman had knowledge and notice of the '780 Patent.  The Complaint also adequately pleads that Harman had specific intent to induce infringement by

the users of the Accused Products through Harman's marketing materials of the JBL Accused Products.  See, e.g., Compl. ¶¶ 43–44, 82, 96, 110, 124, 138, 152, 166 (allegations including images of marketing materials for the JBL Live Pro+ TWS Headphones); id. ¶ 68 (allegation including an image of marketing materials for the JBL Tour Pro 2).  Thus, the Complaint provides plausible allegations for pre-suit induced infringement of the '780 Patent.

### b.    Post-Suit Claim

Even though a claim for pre-suit induced infringement is plausibly pled, the Court will address the post-suit claim for induced infringement.  The Parties dispute whether post-suit knowledge may support claims for induced infringement after the filing of the complaint.  This issue generally arises when an amended complaint is filed, with the dispute over whether the allegations of knowledge and continuing infringement refer, at minimum, to the period between the filing of the original complaint and the filing of the amended complaint.

The Court takes the approach that pre-filing knowledge is not required to state a claim for inducement.  See Clouding IP LLC v. Amazon.com, Inc. ("Clouding IP"), Nos. 12-cv-00641-LPS, 12-cv-00642-LPS, 12-cv-00675-LPS, 2013 WL 2293452, at *3 (D. Del. May 24, 2013); DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc. ("DoDots"), 2019 WL 3069773, at *3 (D. Del. July 12, 2019) (concluding that induced infringement claims based on post-suit conduct is

permissible).  The complaint can be the source of the knowledge required to

sustain claims of induced infringement occurring after the filing date and can

provide sufficient knowledge of the patents-in-suit for purposes of stating a claim

for indirect infringement, after an amended complaint is filed.  See Groove Digital,

Inc. v. Jam City, Inc., No. 18-cv-01331-RGA, 2019 WL 351254, at *4 (D. Del.

Jan. 29, 2019); Walker Digital, LLC v. Facebook, Inc., 852 F. Supp. 2d 559, 565

(D. Del. 2012) ("In sum, if a complaint sufficiently identifies, for purposes of Rule

8, the patent at issue and the allegedly infringing conduct, a defendant's receipt of

the complaint and decision to continue its conduct despite the knowledge gleaned

from the complaint satisfies the requirements of Global-Tech."); SoftView LLC v.

Apple Inc., No. 10-cv-00389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ("An

accused infringer is on notice of the patent(s)-in-suit once an initial pleading

identifies the patents-in-suit, and a patentee that successfully proves the remaining

legal elements of indirect infringement is entitled to recover for any post-filing

indirect infringement of those patents.").

　　　The complaint alone cannot operate to establish knowledge, however,

without being amended.  See Wrinkl, Inc. v. Facebook, Inc. ("Wrinkl"), No. 20-cv-

01345-RGA, 2021 WL 4477022, at *6 (D. Del. Sept. 30, 2021); Helios Streaming,

LLC v. Vudu, Inc., No. 19-cv-01792-CFC-SRF, 2020 WL 2332045, at *4–5 (D.

Del. May 11, 2020), report and recommendation adopted, 2020 WL 3167641 (D.

Del. June 15, 2020) (stating that this district addresses the sufficiency of amended pleadings for post-filing knowledge of inducement and not the original complaint).

Techiya may seek leave to amend the complaint to allege knowledge from the filing of the original complaint.  See Wrinkl, 2021 WL 4477022, at *6 ("For indirect infringement, if the plaintiff were not permitted to amend a complaint, it would be the equivalent of saying that the plaintiff's failure to give notice of the patents outside of litigation operated as a bar to bringing a suit for indirect infringement").  Because the Court found sufficient allegations to support a pre-suit induced infringement claim, Techiya may choose to not amend its post-suit claim.  The Court would allow Techiya to amend its complaint to provide sufficient notice for its post-suit induced infringement claim for the '780 Patent if it chooses.

### 2.    Willful Infringement

Techiya filed both pre-suit and post-suit willful infringement claims for the '780 Patent, alleging that Harman had notice of its infringement "since receiving the aforementioned slide deck from Techiya in February of 2019" or, in the alternative, "at least since the date of the filing of the complaint in this action," and willfully infringed and continues to infringe the '780 Patent.  Compl. ¶¶ 51, 60.

Under 35 U.S.C. § 284, the Court may increase the amount of damages assessed by up to three times.  35 U.S.C. § 284.  The U.S. Supreme Court has observed that enhanced damages:

> are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior.  The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or— indeed—characteristic of a pirate.

Halo Elecs., Inc. v. Pulse Elecs. Inc. ("Halo"), 579 U.S. 93, 104–05 (2016).

For willful infringement claims, "the patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim."  Välinge Innovation AB v. Halstead New England Corp., No. 16-cv-01082-LPS, 2018 WL 2411218, at *10–12 (D. Del. May 29, 2018), report and recommendation adopted, 2018 WL 11013901 (D. Del. Nov. 6, 2018).  "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  Halo, 579 U.S. at 105; see also WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016).  Subjective willfulness may be found when "the risk of infringement 'was either known or so obvious that it should have been known to

the accused infringer.'" <u>Halo</u>, 579 U.S. at 101 (quoting <u>In re Seagate Techs., LLC</u>, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

### a.    Pre-Suit Claim

The Complaint alleges that Harman "knew and should have known that [its] actions would cause direct and induced infringement of the '780 Patent, and on information and belief, [Harman has] monitored the substantial prior art submissions made prior to issuance of the '780 [P]atent."  Compl. ¶ 59.

At the pleading stage, the patentee "must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim."  <u>Välinge Innovation AB</u>, 2018 WL 2411218, at *10–12.  This standard can be distilled into three elements, that the accused infringer: (1) was aware of the patent, (2) infringed the patent after becoming aware of its existence, and (3) knew or should have known that its conduct amounted to infringement.  <u>See id.</u> at *13.

Considering the discussions between Harman and Techiya, which involved Techiya's sharing of studies, marketing materials, prototypes, a spreadsheet and an "Opportunity Overview" slide deck of its patents, it can be plausibly inferred that Harman had knowledge of the '780 Patent.  The spreadsheet included a comprehensive valuation model of Techiya's intellectual property and contained hundreds of patents and patent applications, categorized by feature and technology,

also referencing the '780 and '692 Patents.  Compl. ¶ 38.  Harman's CFO also

made a "detailed review" of Techiya's patent portfolio, rejecting the potential

licensing agreement between Techiya and Harman on May 4, 2020.  Given the

amount of knowledge that Harman had about the Pre-2020 Patents, the alleged

facts viewed in the light most favorable to the non-moving party plausibly support

the inference that Harman knew that the Accused Products infringed the '780

Patent.  Because the Complaint adequately states that Harman had pre-suit

knowledge and knowingly infringed the '780 Patent, Techiya's pre-suit willful

infringement of the '780 Patent is sufficiently pled.

### b.    Post-Suit Claim

Even though a pre-suit claim for willful infringement is plausibly pled, the

Court will address the post-suit claim for willful infringement. The Parties dispute

whether post-suit knowledge may support claims for willful infringement.  Judges

in this district have taken different views on whether a plaintiff can sufficiently

plead knowledge of a patent-in-suit in an amended complaint by referring back to

the notice that the accused infringer received of the patent's existence via the filing

of a prior complaint in the same case for indirect infringement or willful

infringement claims.  Compare Cleveland Medical Devices Inc. v. ResMed Inc.,

No. 22-cv-00794-GBW, 2023 WL 6389628, at *6 (D. Del. Oct. 2, 2023)

(Williams, J.) (concluding that the complaint itself cannot serve as the basis for a

defendant's actionable knowledge for willful infringement claim), Pact XXP

Schweiz AG v. Intel Corp, No. 19-cv-01006-JDW, 2023 WL 2631503, at *5,

recons. denied, 2023 WL 3934058 (D. Del. Mar. 24, 2023) (Wolson, J.)

(concluding that a defendant's alleged knowledge based solely on the content of

that complaint or a prior version of the complaint filed in the same lawsuit is

insufficient for a willful infringement claim), Wrinkl, 2021 WL 4477022, at *6–7

(Andrews, J.) (concluding that an amended complaint can establish post-suit

knowledge for indirect infringement claims but not for willful infringement

claims), and ZapFraud, Inc. v. Barracuda Networks, Inc., 528 F. Supp. 3d 247,

249–50 (D. Del. 2021) (Connolly, J.) (concluding that a "complaint itself cannot be

the source of the knowledge required to sustain claims of induced infringement and

willfulness-based enhanced damages"), with ICON Health & Fitness, Inc. v. Tonal

Sys., Inc. ("ICON Health & Fitness"), No. 21-cv-00652-LPS-CJB, 2022 WL

611249, at *3 (D. Del. Feb. 7, 2022) (Burke, J.) (concluding that post-suit induced

infringement and willful infringement claims are permissible with knowledge of a

patent-in-suit in an amended complaint), Ravgen, Inc. v. Ariosa Diagnostics, Inc.

("Ravgen"), No. 20-cv-01646-RGA-JLH, 2021 WL 3526178, at *4 (D. Del. Aug.

11, 2021) (Hall, J.) (concluding that a party may maintain a claim for willful

infringement made in an amended complaint if the accused infringer first gained

knowledge of the patent from the original complaint), and Clouding IP, 2013 WL

2293452, at *4 (Stark, J.) (concluding that "for purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superseded original complaint formally alleging infringement").

Techiya argues that the complaint itself, without an amended complaint superseding it, can provide notice of post-suit willfulness. See Pl.'s Opp'n Br. at 5–6 (citing DoDots, 2019 WL 3069773, at *3; ICON Health & Fitness, 2022 WL 611249, at *3 n.5). During oral argument, Techiya cited to and emphasized the holding in Ravgen, a case which adopted its reasoning from IOENGINE, LLC v. PayPal Holdings, Inc. ("IOENGINE"), No. 18-cv-00452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019), to find that an amended complaint provided notice. See Pl.'s April 23 First Letter Suppl. Authority at 1. Specifically, Techiya highlights a quote in Ravgen, which states that "if a defendant is on notice of a patent and the allegations of the infringement as a result of [the] filing of a pleading, there is no reason it should not be answerable for willful infringement after that date if the patentee can prove the requisite level of culpable behavior during the post-suit period." Ravgen, 2021 WL 3526178, at *4; see Pl.'s April 23 First Letter Suppl. Authority; see also IOENGINE, 2019 WL 330515, at *7 (concluding that post-suit

knowledge for indirect and willful infringement is conveyed by service of the original complaint).

This Court adopts the approach that the original complaint, later superseded by the amended complaint, is sufficient to support a post-suit willful infringement claim at the motion to dismiss stage. This approach follows most of the cases in the district concluding that notice from a complaint is sufficient for indirect and willfulness claims when an original complaint is superseded by an amended complaint. See Ravgen, 2021 WL 3526178, at *2 (involving a second amended complaint for post-suit willful infringement claim); DoDots, 2019 WL 3069773, at *1 (involving a second amended complaint for post-suit induced infringement claim); ICON Health & Fitness, 2022 WL 611249, at *1 (involving a first amended complaint for pre-suit induced and willfulness claims but noting that re-pleading is not necessary for post-suit claims).

The Court discerns little practical difference between a pre-complaint notice letter and the filing of an original complaint that is later superseded by an amended complaint. See Clouding IP, 2013 WL 2293452, at *4.

The Court found that sufficient allegations support a pre-suit willful infringement claim, so Techiya may choose to not amend its complaint to allege notice for its post-suit willful infringement claims for the '780 Patent based on the

original complaint.  If Techiya chooses to amend its complaint, the Court will allow such amendment.

Accordingly, Count I sufficiently pleads pre-suit induced and willful infringement claims, but does not adequately plead post-suit induced and willful infringement claims for the '780 Patent.  The Court partially dismisses Count I without prejudice and Techiya may seek leave to file an amended complaint if it so chooses.

### B.    Infringement of the '692 Patent (Count II)

Count II alleges that Harman directly, indirectly, and willfully infringed, and continues to infringe, at least claim 1 of the '692 Patent with the JBL Accused Products.  See Compl. ¶¶ 63, 64, 69.  Harman moves to dismiss Count II as to the induced and willful infringement claims.  Defs.' Mot. at 3.

### 1.    Induced Infringement

Techiya filed both pre-suit and post-suit induced infringement claims for the '692 Patent, alleging that Harman had notice of its infringement "since receiving the aforementioned slide deck from Techiya in February of 2019" or, in the alternative, "at least since the date of the filing of the complaint in this action," and indirectly infringed and continues to indirectly infringe by actively inducing infringement of the '692 Patent by others, such as users of the JBL Accused Products within this district.  Compl. ¶¶ 65, 69.  Harman does not argue in this Rule 12(b)(6) motion

that Techiya failed to state a direct infringement claim for which relief can be granted for the '692 Patent, so for the purposes of this motion, the Court presumes that Techiya plausibly pled direct infringement of the '692 Patent.

### a.    Pre-Suit Claim

The '692 Patent was issued before May 4, 2020 and is referred to as one of the "Pre-2020 Patents."  Based on the allegations set forth in the Complaint, as with the '760 Patent, it can be inferred that Harman had knowledge and notice of the '692 Patent based on Harman's review of Techiya's patent portfolio and its discussions with Techiya, and that Harman plausibly induced infringement by users of the JBL Accused Products through Harman's marketing materials.  Thus, Techiya's pre-suit claim for induced infringement of the '692 Patent is adequately pled.

### b.    Post-Suit Claim

Even though a pre-suit claim for induced infringement is plausibly pled, the Court will address the post-suit claim for induced infringement.  As discussed above, the Court takes the approach that the complaint alone cannot establish post-suit knowledge for indirect infringement claims without being amended.  Thus, Techiya fails to plead sufficient knowledge for the post-suit induced infringement claim of the '692 Patent.

### 2.    Willful Infringement

Techiya filed both pre-suit and post-suit willful infringement claims for the '692 Patent, alleging that Harman had notice of its infringement "since receiving the aforementioned slide deck from Techiya in February of 2019" or, in the alternative, "at least since the date of the filing of the complaint in this action," and that Harman willfully infringed and continues to infringe the '692 Patent.  Compl. ¶¶ 65, 74.

### a.    Pre-Suit Claim

Considering the discussions between Harman and Techiya, which involved Techiya's sharing of studies, marketing materials, prototypes, a spreadsheet and an "Opportunity Overview" slide deck of its patents, it can be plausibly inferred that Harman had knowledge of the '692 Patent.  The spreadsheet included a comprehensive valuation model of Plaintiff's intellectual property and contained hundreds of patents and patent applications, categorized by feature and technology, also referencing the '780 and '692 Patents.  Id. ¶ 36.  Harman's CFO also made a "detailed review" of Techiya's patent portfolio, rejecting the potential licensing agreement between Techiya and Harman on May 4, 2020.  Given the amount of knowledge that Harman had about the Pre-2020 Patents, the alleged facts viewed in the light most favorable to the non-moving party plausibly support the inference that Harman knew that the Accused Products infringed the '692 Patent.  Because the Complaint adequately states that Harman had pre-suit knowledge and

knowingly infringed the '692 Patent, Techiya's pre-suit willful infringement claim of the '692 Patent is sufficiently pled.

### b.     Post-Suit Claim

Because the Complaint without being amended is insufficient notice for post-suit willfulness claims, Techiya failed to adequately plead a post-suit willful infringement claim for the '692 Patent.

Accordingly, Count II sufficiently pleads pre-suit induced and willful infringement claims, but does not adequately plead post-suit induced and willful infringement claims for the '692 Patent.  The Court partially dismisses Count II without prejudice and will allow Techiya to file an amended complaint if it so chooses.

### C.     Infringement of the '044 Patent (Count III)

Count III alleges that Harman directly, indirectly, and willfully infringed, and continues to infringe, at least claim 1 of the '044 Patent with the Accused Products.  Compl. ¶¶ 77, 78, 83.  Harman moves to dismiss Count III as to the induced and willful infringement claims.  See Defs.' Mot. at 1.

### 1.     Induced Infringement

Techiya filed both pre-suit and post-suit induced infringement claims for the '044 Patent, alleging that Harman had notice of its infringement "since receiving the aforementioned slide deck from [Techiya] in February of 2019" or, in the

alternative, "at least since the date of the filing of the complaint in this action," and indirectly infringed and continues to indirectly infringe by actively inducing infringement of the '044 Patent by others, such as users of the Accused Products within this district.  Compl. ¶¶ 79, 83.  The Court presumes for the purposes of this motion that Techiya plausibly pled direct infringement of the '044 Patent because Harman does not argue in this Rule 12(b)(6) motion that Techiya failed to state a direct infringement claim on which relief can be granted for the '044 Patent.

### a.      Pre-Suit Claim

The '044 Patent was issued before May 4, 2020 and is referred to as one of the "Pre-2020 Patents."  As with the other Pre-2020 Patents, the Complaint sufficiently alleges that Harman had knowledge and notice of the '044 Patent based on Harman's review of Techiya's patent portfolio and its discussions with Techiya, and that Harman plausibly induced infringement by users of the JBL Accused Products through marketing materials.  Thus, Techiya's pre-suit claim for induced infringement of the '044 Patent is adequately pled.

### b.      Post-Suit Claim

Because the Complaint without being amended is insufficient notice for post-suit indirect infringement claims, Techiya failed to adequately plead a post-suit induced infringement claim for the '044 Patent.

### 2.    Willful Infringement

Techiya filed both pre-suit and post-suit willful infringement claims for the

'044 Patent, alleging that Harman had notice of its infringement "since receiving the

aforementioned slide deck from Techiya in February of 2019" or, in the alternative,

"at least since the date of the filing of the complaint in this action," and that Harman

willfully infringed and continues to infringe the '044 Patent.  Compl. ¶¶ 79, 88.

### a.    Pre-Suit Claim

Considering the amount of knowledge that Harman had about the Pre-2020

Patents, the alleged facts viewed in the light most favorable to the non-moving

party plausibly support the inference that Harman knew that the Accused Products

infringed the '044 Patent.  The Complaint adequately pleads Harman's pre-suit

knowledge of infringement of the '044 Patent to state a claim for pre-suit willful

infringement.

### b.    Post-Suit Claim

Because the Complaint without being amended is insufficient notice for

post-willfulness claims, Techiya failed to adequately plead a post-suit willful

infringement claim for the '044 Patent.

Accordingly, Count III sufficiently supports the pre-suit induced and willful

infringement claims, but does not adequately plead the post-suit induced and

willful infringement claims for the '044 Patent.  The Court partially dismisses

Count III without prejudice and Techiya may seek leave to file an amended complaint.

## D.    Infringement of the '966 Patent (Count IV)

Count IV alleges that Harman directly, indirectly, and willfully infringed, and continues to infringe, at least claim 1 of the '966 Patent with the JBL Accused Products, including the JBL Tour Pro 2 and similar earphone products.  Compl. ¶¶ 91, 92, 97.  Harman moves to dismiss Count IV as to the induced and willful infringement claims.  See Defs.' Mot. at 1; Defs.' Moving Br. at 4–5.

### 1.    Induced Infringement

Techiya filed a post-suit induced infringement claim for the '966 Patent, alleging that Harman had notice of its infringement "at least since the date of filing of the complaint in this action" and indirectly infringed and continues to indirectly infringe by actively inducing infringement of the '966 Patent by others, such as users of the JBL Accused Products within this district.  Compl. ¶¶ 93, 97.  The Court presumes for the purposes of this motion that Techiya plausibly pled direct infringement because Harman does not argue that Techiya failed to state a direct infringement claim on which relief can be granted for the '966 Patent.  The '966 Patent was issued on November 1, 2022 and is referred to as one of the "Post-2020 Patents."  Because the Complaint alone without being amended is insufficient

notice for post-suit indirect infringement claims, Techiya failed to adequately plead induced infringement of the '966 Patent.

### 2.     Willful Infringement

Techiya filed a post-suit willful infringement claim, alleging that Harman had notice of its infringement of the '966 Patent "at least since the date of filing of the complaint in this action," willfully infringed, and continues to willfully infringe the '966 Patent.  Compl. ¶¶ 93, 102.  Because the Complaint without being amended is insufficient notice for post-willfulness claims, Techiya failed to adequately plead post-suit willful infringement of the '966 Patent.

Therefore, the Count IV does not sufficiently plead post-suit claims for induced and willful infringement of the '966 Patent.  The Court partially dismisses Count IV without prejudice and Techiya may seek leave to file an amended complaint.

### E.     Infringement of the '315 Patent (Count V)

Count IV alleges that Harman directly, indirectly, and willfully infringed, and continues to infringe, at least claim 1 of the '315 Patent with the JBL Accused Products, including the JBL Tour Pro 2 and similar earphone products.  Compl. ¶¶ 105, 106, 111.  Harman moves to dismiss Count V for all claims.  See Defs.' Mot. at 1; Defs.' Moving Br. at 10, 12–13.

### 1.   Direct Infringement

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must recite "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353. "[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements." Id. To satisfy the Iqbal pleading standard in a patent case, "[s]pecific facts are not necessary." Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted). The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." Id.

Harman asserts that Techiya fails to sufficiently plead all required limitations for direct infringement of the '493, '643, '315, and '587 Patents. Defs.' Moving Br. at 10–11 (citing Vervain, LLC v. Micron Tech. Inc., No. 21-cv-00487, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022)). Harman contends that there is a heightened pleading standard for patent claims that involve material limitations in

its interpretation of the U.S. Court of Appeals for the Federal Circuit's ("CAFC")

most recent guidance in Bot M8.  See id.

The Court does not agree that Bot M8 sets forth a heightened pleading

standard for patent infringement claims.  In Bot M8, the CAFC held that "a blank

element-by-element pleading standard for patent infringement" is not supported by

and "goes beyond the standard the U.S. Supreme Court articulated in Iqbal and

Twombly."  Bot M8, 4 F.4th at 1352.  While the CAFC acknowledged that "the

level of detail required in any given case will vary depending on a number of

factors, including the complexity of the technology, the materiality of any given

element to practicing the asserted claim(s), and the nature of the allegedly

infringing device," the CAFC re-iterated the standard set forth in Twombly.  Id. at

1352–53.  Although the CAFC decided Bot M8 under the laws applied in the Ninth

Circuit, the Third Circuit's pleading standards are not materially different.  See,

e.g., NovaPlast Corp. v. Inplant, LLC, No. 20-cv-07396, 2021 WL 5770264, at *6

(D.N.J. Dec. 6, 2021) (applying the pleading standard guidance from Bot M8).

Whether allegations are plausibly pled in each case may vary but they must meet

the plausibility standard of Iqbal/Twombly.  See DSM IP Assets, B.V. v.

Honeywell Int'l, Inc., No. 23-cv-00675-WCB, 2023 WL 7214672, at *4 (D. Del.

Nov. 2, 2023) (holding that Bot M8 does not set forth a more restrictive pleading

rule, even with complex cases).

Harman argues that the Complaint does not adequately plead a material

limitation of claim 1 of the '315 Patent, specifically the sending of a "modified

audio signal" from the earpiece's logic circuit.  Defs.' Moving Br. at 13; Defs.'

Reply Br. at 2.

Claim 1 of the '315 Patent recites in relevant part:

*generating a mixed audio signal* by mixing the noise reduction signal
with the audio signal; and

*sending a modified audio signal* to the speaker, where the modified
audio signal includes the mixed audio signal.

'315 Patent at 23:19–28 (emphasis added).

The Complaint alleges that the JBL Live Pro+ is an earpiece that includes

Adaptive Noise Cancelling and Personal Sound Amplification features, including

at least three microphones.  See Compl. ¶ 110.  At least two of the microphones

operate to produce a first microphone signal and a second microphone signal, and

the third microphone is an ear canal microphone configured to generate a third

microphone signal.  See id.  The earpiece also contains a speaker, a memory to

store instructions, and a logic circuit configured to execute instructions.  Id.  The

Complaint alleges that, "[u]pon information and belief, when the Adaptive Noise

Cancelling technology is activated, the logic circuit will generate a noise reduction

signal using at least one of the microphone signals or a combination of said signals.

Then the circuit will receive an *audio signal* (from, for example, the user's media),

which it mixes with the noise reduction signal and sends to the speaker for the user

to experience reduced distraction and maximized audio quality during the use of

Adaptive Noise Cancelling." See id. (emphasis added).

The Court holds that Techiya sufficiently pled its direct infringement claim

at this stage in the proceedings.  The allegations meet the Iqbal/Twombly standard

by identifying the infringing accused product (the JBL Live Pro+) and the specific

functionality that is infringing (by describing how the Adaptive Noise Cancelling

feature works through the mixing of noise reduction signals with microphone

signals for a noise reduction effect).  The lack of the words "modified audio

signal" is not detrimental to the sufficiency of the pleading of the allegations, as

Techiya does not need to plead every single element for its claim.  See Bot M8, 4

F.4th at 1352; Defs.' Reply Br. at 2.  Therefore, the Complaint sufficiently pleads a

direct infringement claim for the '315 Patent.

## 2.    Induced Infringement

Techiya filed a post-suit induced infringement claim, alleging that Harman

had notice of its infringement of the '315 Patent "at least since the date of filing of

the complaint in this action" and indirectly infringed and continues to indirectly

infringe by actively inducing infringement of the '315 Patent by others, such as

users of the JBL Accused Products within this district.  Compl. ¶¶ 107, 111.

Because a claim for direct infringement plausibly exists, the Court turns to the

sufficiency of the knowledge and specific intent for an induced infringement claim.

The '315 Patent was issued after May 4, 2020 and is referred to as one of the

"Post-2020 Patents."  Because the Complaint is insufficient notice for post-suit

induced infringement claims without being amended, Techiya failed to adequately

plead induced post-suit infringement of the '315 Patent.

### 3.    Willful Infringement

Techiya filed a post-suit willful infringement claim, alleging that Harman

had notice of its infringement of the '315 Patent "at least since the date of filing of

the complaint in this action" and willfully infringed and continues to willfully

infringe the '315 Patent.  Compl. ¶¶ 107, 116.  Because the Complaint is

insufficient notice for post-suit willful infringement claims without being

amended, Techiya failed to adequately plead post-suit willful infringement of the

'315 Patent.

Accordingly, Count V sufficiently pleads direct infringement of the '315

Patent but does not adequately plead post-suit claims for induced and willful

infringement.  The Court partially dismisses Count V without prejudice and

Techiya may seek leave to file an amended complaint.

### F.    Infringement of the '643 Patent (Count VI)

Count VI alleges that Harman directly, indirectly, and willfully infringed,

and continues to infringe, at least claim 1 of the '643 Patent with the JBL Accused

Products, including the JBL Tour Pro 2 and similar earphone products.  Compl. ¶¶ 119, 120, 125.  Harman moves to dismiss Count VI as to all claims.  Defs.' Mot. at 1.

### 1.    Direct Infringement

As with the direct infringement claim of the '315 Patent, Harman contends that the Complaint fails to sufficiently plead the allegations relating to the Adaptative Noise Technology of the JBL Live Pro+ for the '643 Patent because it fails to plead the sending of a "modified mixed signal."  See Defs.' Moving Br. at 12–13.  Harman also provides a prosecution history of the '643 Patent, which indicates that claim 1 of the '643 Patent was amended to add the "modified mixed signal" limitation.  Id. at 12 (citing Response to Office Action for '643 Patent at 3, 14).

Claim 1 of the '643 Patent recites in relevant part:

generating a background noise reduction signal using either the first and second microphone signals or the second and third microphone signals;

*mixing an audio content signal and the background noise reduction signal generating a mixed signal*; and

s*ending a modified mixed signal to the speaker*.

'643 Patent at 16:62–67 (emphasis added).

The Complaint alleges that, "[u]pon information and belief, when the Adaptive Noise Cancelling technology is activated, the processor will generate a

background noise reduction signal using at least one of the microphone signals

or a combination of said signals.  Then the circuit will receive an audio signal (from,

for example, the user's media), which it mixes with the background noise reduction

signal and sends to the speaker for the user to experience reduced distraction and

maximized audio quality during the use of Adaptive Noise Cancelling."  Compl.

¶ 124.

    As with the '315 Patent, the lack of the allegation of a modified signal (or

here, a "modified mixed signal") is not detrimental to the sufficiency of the

pleading of the allegations.  Not every single element of a patent claim needs to be

pled to support a plausible claim to defeat a motion to dismiss.  See Bot M8, 4

F.4th at 1352; Defs.' Reply at 2.  The allegations identify the infringing accused

product (the JBL Live Pro+) and the specific functionality that is infringing (by

describing how the Adaptive Noise Cancelling feature works through the mixing of

noise reduction signals with microphone signals for a noise reduction effect).

Therefore, the Complaint sufficiently pleads a direct infringement claim for the

'643 Patent.

## 2.    Induced Infringement

    Techiya filed a post-suit induced infringement claim, alleging that Harman

had notice of its infringement of the '643 Patent "at least since the date of filing of

the complaint in this action" and indirectly infringed and continues to indirectly

infringe by actively inducing infringement of the '643 Patent by others, such as users of the JBL Accused Products within this district.  See Compl. ¶¶ 121, 125. Because a claim for direct infringement plausibly exists, the Court turns to the sufficiency of the knowledge and specific intent for an induced infringement claim. The '643 Patent was issued after November 1, 2022 and is referred to as one of the "Post-2020 Patents."  Because the Complaint is insufficient notice for a post-suit induced infringement claim without being amended, Techiya failed to adequately plead post-suit induced infringement of the '643 Patent.

### 3.    Willful Infringement

Techiya filed a post-suit willful infringement claim, alleging that Harman had notice of its infringement of the '643 Patent "at least since the date of filing of the complaint in this action" and willfully infringed and continues to willfully infringe the '643 Patent.  See Compl. ¶¶ 121, 130.  Because the Complaint is insufficient notice for a post-suit willful infringement claim without being amended, Techiya failed to adequately plead post-suit willful infringement of the '643 Patent.

Therefore, Count VI sufficiently pleads direct infringement of the '643 Patent, but does not adequately plead post-suit claims for induced and willful infringement.  The Court partially dismisses Count VI without prejudice and Techiya may seek leave to file an amended complaint.

### G.    Infringement of the '493 Patent (Count VII)

Count VII alleges that Harman directly, indirectly, and willfully infringed, and continues to infringe, at least claim 1 of the '493 Patent with the JBL Accused Products, including the JBL Tour Pro 2 and similar earphone products.  Compl. ¶¶ 133, 134, 139.  Harman moves to dismiss Count VII as to all claims.  Mot. Dismiss at 3.

### 1.    Direct Infringement

Harman contends that the Complaint does not raise a plausible claim for direct infringement of the '493 Patent because it only alleges that the JBL Live Pro+ uses one signal, rather than two signals as recited in the patent claim, for its "Check My Best Fit" feature, ultimately failing to allege all limitations in the patent.  Defs.' Moving Br. at 11–12.  Harman cites to 3M Innovative Properties Co. v. Avery Dennison Corp., 350 F.3d 1365, 1369 (Fed. Cir. 2003), for the proposition that the use of the terms "first" and "second" is a common patent-law convention to distinguish between repeated instances of an element or limitation. Id. at 12.

Techiya responds that the Complaint pled two signals as required by the calculation limitation because each microphone generates a signal, and the Accused Products use the combination of the test signal and at least one

microphone signal to calculate a value to determine seal quality.  Pl.'s Opp'n Br. at 8.

Harman replies that the Complaint does not allege that the microphones generate a signal and Techiya is relying on unpled "microphone signals" in its argument.  Defs.' Reply Br. at 1.

Claim 1 of the '493 Patent discusses the method used to test a seal of an earphone, reciting in relevant part:

> a processor, wherein the processor is configured to execute the instructions to perform operations, the operations comprising:
>
> generating a test signal, wherein the test signal includes multiple frequency components, wherein at least one component lies between a range of 30 Hz and 200 Hz;
>
> sending the test signal to a speaker of an earphone, wherein the earphone includes a first microphone, the speaker, and a sealing section, and wherein the sealing section is configured to form an acoustic barrier between a first side of the earphone and a second side of the earphone when the earphone is worn by a user, receiving a first microphone signal from the first microphone;
>
> *calculating a value, using a first signal and a second signal, wherein the value is the result of a non phase calculation of at least one of a coherence, a correlation, a cross-correlation, a difference, or a combination*;
>
> comparing the value to a threshold to determine a seal quality between the first side and the second side;

'493 Patent at 19:57–20:14 (emphasis added).

The JBL Live Pro+ is an earpiece that includes a feature to "Check My

Best Fit," which "finds the ear tip that best suits the user for maximum comfort, minimum sound leakage, and optimal support to noise cancelling."  Compl. ¶ 138. The Complaint alleges that, "[u]pon information and belief, the earpiece generates a *test signal* with a frequency component between a range of 30 Hz and 200 Hz, which is sent to a speaker in the earpiece.  The microphones on the earpiece then detect the *signal* and calculate a value to determine seal quality, which aids the JBL smartphone app in determining the seal quality.  The quality metric is then conveyed and sent to the user."  Id. (emphasis added).

During oral argument, the Parties discussed whether the Complaint adequately pled a second signal.  Harman contended that the Complaint only identified one signal, alleging that a single test signal was part of the process of calculating a value to determine seal quality.  Oral Arg. at 1:10:05–1:10:24. Harman stated that although Techiya argued in its opposition brief that each microphone produced a new signal, the Complaint did not identify a microphone signal or that such a microphone signal was used in any way to calculate a value to determine the seal quality.  Id. at 1:10:41–1:11:10.

Techiya argued that the Complaint adequately pled a second signal because "the output from the microphones are themselves a signal," with the first signal as the "test signal" and the second signal generated from the microphone that received the test signal.  Id. at 1:31:54–1:32:03, 1:36:52–1:37:00.  Techiya agreed

that the Complaint could have been clearer in pleading that there were two signals, but emphasized that only notice is required.  For example, Techiya acknowledged that the inference of a second signal generated from the microphone that received the first signal was unclear, agreed that this inference was not "black and white," and noted that the two instances of the use of a singular term for "signal" "should have been plural" terms instead.  See id. at 1:32:30–1:32:24, 1:33:21–1:33:32, 1:37:38–1:37:46.

However, Techiya stated that even if the Complaint does not expressly state that the microphones generated their own signals, an engineer of ordinary skill in the art would be able to infer that there were two signals based on the allegations, so the pleading is adequate for notice.  Id. at 1:37:47–1:38:90.  Harman responded that despite this alleged inference, the Complaint pleads more than one microphone and alleges the possibility of multiple signals from multiple microphones.  See id. at 1:50:39–1:52:40.

The Court finds that Techiya does not sufficiently allege a "first" signal and "second" signal to support the plausible claim of direct infringement.  The claim recites that the processor "calculates a value, using a first signal and a second signal," but the Complaint is unclear as to whether the microphones generate the second signal because it pleads only a singular "signal," and it is unclear how many test signals are present because there is more than one microphone alleged in

the Complaint.  Thus, the Complaint fails to sufficiently plead a direct

infringement claim for the '493 Patent.  Because Techiya does not plausibly plead

direct infringement, the Complaint also fails to plead claims for induced and

willful infringement.

The Court dismisses Count VII without prejudice and Techiya may seek

leave to file an amended complaint.

### H.    Infringement of the '587 Patent (Count VIII)

Count VIII alleges that Harman directly, indirectly, and willfully infringed,

and continues to infringe, at least claim 1 of the '587 Patent with the JBL Accused

Products, including the JBL Tour Pro 2 and similar earphone products.  Compl.

¶¶ 147, 148, 153.  Harman moves to dismiss Count VIII as to all claims.  See

Defs.' Mot. at 1; Defs.' Moving Br. at 13.

#### 1.    Direct Infringement

Harman contends that the Complaint fails to sufficiently plead direct

infringement of the '587 Patent because the allegations fail to indicate that a user

receives notification when a sonic signature is detected (such as through the user's

voice) to activate the "VoiceAware" or "Ambient Aware" feature of the interface

application that works together JBL Live Pro+.  See Defs.' Moving Br. at 13.

Techiya argues that its Complaint sufficiently pleads a user notification with

the allegation that "[w]hen the user makes a request . . . , some portion of the data

is sent to the speaker," contending that the action of sending data to the speaker is

equivalent to the action of notifying the user.  Pl.'s Opp'n Br. at 10.  Techiya also

refers to Harman's marketing materials, which demonstrate that the Accused

Products notifiy a user when they send "sounds of the world" to the user.  Id.

Harman replies that Techiya "pleaded itself out of court" by conceding that

the sending of data to the speaker is triggered "[w]hen the user makes a request,"

rather than "when the sonic signature is detected" as claimed in the '587 Patent.

Defs.' Reply Br. at 3.

Claim 1 of the '587 Patent recites in pertinent part:

analyzing the audio buffer for detecting a sonic signature;

notifying a user when the sonic signature is detected;

sending a modified microphone signal to the data buffer replacing or
adding to previous data stored in the data buffer; and

sending a portion of the data stored in the data buffer, spanning a time
period, to the speaker in response to a user request, wherein the user
request is one of the sonic signature that is a voice command or a manual
input from the user interface.

'587 Patent at 24:66–25:9 (emphasis added).

The Complaint alleges that the JBL Live Pro+ is an earpiece that connects to

the JBL Headphones APP, which is a user interface for controlling functionalities

on the earpiece.  Compl. ¶ 152.  The earpiece includes the functionality of

VoiceAware and Ambient Aware features, using at least three microphones.  See

id.  At least one of the microphones operates to capture ambient sound and

generate a microphone signal, and the JBL Live Pro+ includes a speaker

configured to emit sound, a memory unit to store instructions, and a processor to

execute instructions.  See id.  The Complaint alleges that "[u]pon information and

belief when the VoiceAware or Ambient Aware features are activated, the processor

receives the microphone signal and detects a sonic signature, such as the user's voice.

When the user makes a request (such as activating the VoiceAware feature from the

Headphones APP), some portion of the data is sent to the speaker."  Id.

The Court observes that the Parties contest the meaning of "notification,"

disagreeing over what serves as an indication that the VoiceAware feature has been

activated by a user's voice and ultimately whether an actual notification (such as

notice from the interface application) is necessary or if the sending of the requested

data alone is enough to constitute the activation of the feature.  On a Rule 12(b)(6)

motion, the Court considers only the sufficiency of the pleadings and does not

make factual findings or consider claims on their merits.  Claim construction is not

proper at this stage.  In addition, not every single element of a patent claim needs

to be pled for a plausible claim.  See Bot M8, 4 F.4th at 1352.  The allegations

identify the infringing accused product (the JBL Live Pro+) and the specific

functionality that is infringing (by describing how the VoiceAware and Ambient

Aware features work, such as through the receipt of a microphone signal and the

detection of a sonic signature to activate the feature).  Therefore, the Court holds

that the Complaint sufficiently pleads direct infringement of the '587 Patent.

## 2.    Induced Infringement

Techiya filed a post-suit induced infringement claim, alleging that Harman

had notice of its infringement of the '587 Patent "at least since the date of filing of

the complaint in this action" and indirectly infringed, and continues to indirectly

infringe, by actively inducing infringement of the '587 Patent by others, such as

users of the JBL Accused Products within this district.  Compl. ¶¶ 149, 153.

Because a claim for direct infringement plausibly exists, the Court turns to the

sufficiency of the knowledge and specific intent for an induced infringement claim.

The '587 Patent was issued after November 1, 2022, and is referred to as one of the

"Post-2020 Patents."  As discussed above, the Complaint is insufficient notice for

post-suit induced infringement claims without being amended.  Thus, Techiya

failed to adequately plead induced infringement of the '587 Patent.

## 3.    Willful Infringement

Techiya filed a post-suit willful infringement claim, alleging that Harman

had notice of its infringement of the '587 Patent "at least since the date of filing of

the complaint in this action" and willfully infringed, and continues to willfully

infringe, the '587 Patent.  Compl. ¶¶ 149, 158.  Because the Complaint is

insufficient notice for post-suit willful infringement claims without being

amended, Techiya failed to adequately plead willful infringement of the '587

Patent.

Therefore, Count VIII sufficiently states a claim for direct infringement, but

fails to plead post-suit claims for induced and willful infringement of the '587

Patent.  The Court partially dismisses Count VIII without prejudice and Techiya

may seek leave to file an amended complaint.

## I.      Infringement of the '632 Patent (Count IX)

Count IV alleges that Harman directly, indirectly, and willfully infringed,

and continues to infringe, at least claim 1 of the '632 Patent with the JBL Accused

Products, including the JBL Tour Pro 2 and similar earphone products.  Compl.

¶¶ 161, 162, 167.  Harman moves to dismiss Count IX as to the induced and willful

infringement claims.  See Defs.' Mot. at 1.

## 1.      Induced Infringement

Techiya filed a post-suit induced infringement claim, alleging that Harman

had notice of its infringement of the '632 Patent "at least since the date of filing of

the complaint in this action" and indirectly infringed and continues to indirectly

infringe, by actively inducing infringement of the '632 Patent by others, such as

users of the Accused Products within this district.  Compl. ¶¶ 163, 167.

The Court presumes that Techiya plausibly pled direct infringement of the

'632 Patent for purposes of this Rule 12(b)(6) motion because Harman does not

challenge this claim.  Defs.' Mot. at 3; <u>see</u> Defs.' Moving Br.  Because a claim for
direct infringement plausibly exists, the Court turns to the sufficiency of the
induced infringement claim.  The '632 Patent was issued after November 1, 2022,
and is referred to as one of the "Post-2020 Patents."  Because the Complaint is
insufficient notice for post-suit induced infringement claims without being
amended, Techiya failed to adequately plead induced infringement of the '632
Patent.

## 2.      Willful Infringement

Techiya brings a post-suit willful infringement claim, alleging that Harman
had notice of its infringement of the '632 Patent "at least since the date of filing of
the complaint in this action" and willfully infringed, and continues to willfully
infringe, the '632 Patent.  Compl. ¶¶ 163, 172.  Because the Complaint is
insufficient notice for post-suit willful infringement claims without being
amended, Techiya failed to adequately plead willful infringement of the '632
Patent.

Therefore, Count IX sufficiently states a claim for direct infringement, but
fails to plead post-suit claims for induced and willful infringement of the '632
Patent.  The Court partially dismisses Count IX without prejudice and Techiya may
seek leave to file an amended complaint.

## IV.    Conclusion

For the foregoing reasons, the Court denies Harman's motion to dismiss the pre-suit induced and willful infringement claims for the '780 Patent (Count I); the '692 Patent (Count II), and the '966 Patent (Count III), as well as the direct infringement claims for the '315 Patent (Count IV), the '643 Patent (Count V), and the '587 Patent (Count VIII).

The Court grants the motion to dismiss the post-suit induced infringement and willful infringement claims for the '780 Patent (Count I), the '692 Patent (Count II), the '044 Patent (Count III), the '966 Patent (Count IV), the '315 Patent (Count V), the '643 Patent (Count VI), the '493 Patent (Count VII), the '587 Patent (Count VIII), and the '632 Patent (Count IX), as well as the direct infringement claims for the '493 Patent (Count VII).

ACCORDINGLY, IT IS HEREBY

**ORDERED** that Defendants' Partial Motion to Dismiss (D.I. 15) is denied in part and granted in part.

IT IS SO ORDERED this 20th day of May, 2024.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.